**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ALAN SHIPMAN, and<br>GARRY LANDSTON, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-79-GKF-FHM |
| | ) | |
| GREG LOGAN, GENE BRENT, | ) | |
| and JERRY BROWN, in their capacity | ) | |
| as employer-trustees of the NECA-IBEW | ) | |
| Local Union No. 584 Pension Plan and | ) | |
| the NECA-IBEW Local Union No. 584 | ) | |
| Profit Sharing Plan; JOHN HARRIS and | ) | |
| JOHNNY PATTERSON, in their capacity | ) | |
| as putative union-trustees of the NECA- | ) | |
| IBEW Local No. 584 Pension Plan and the | ) | |
| NECA-IBEW Local Union No. 584 Profit | ) | |
| Sharing Plan; NECA-IBEW LOCAL | ) | |
| UNION NO. 584 PENSION PLAN; and | ) | |
| NECA-IBEW LOCAL UNION NO. 584 | ) | |
| PROFIT SHARING PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the court are the parties' Motions for Summary Judgment [Doc. Nos. 38, 40]. For the reasons set forth below, plaintiffs' motion [Doc. No. 38] is denied and defendants' motion [Doc. No. 40] is granted.

**I. Background**

This dispute arises from an intra-union squabble between rival factions of Local 584 of the International Brotherhood of Electrical Workers ("Local 584"). Specifically, it concerns the attempted removal of defendant Johnny Patterson ("Patterson") as employee trustee of Local 584's Pension and Profit Sharing Plans.

In summer 2014, Patterson resigned as business manager of Local 584 in connection with settlement of unfair labor practices charges he alleged against the union.  [Doc. No. 38, p. 2]; [Doc. No. 43, p. 10].  Patterson was replaced as business manager by plaintiff Alan Shipman ("Shipman").  Under Art. 17, § 8 of the IBEW Constitution, a local business manager, among other things, "serve[s] . . . as trustee on all trust funds . . . provided for in [  ] collective bargaining agreements" negotiated by the union.  [Doc. No. 38-1, p. 118].  To that end, in addition to serving as business manager, Patterson served as trustee of Local 584's Pension and Profit Sharing Plans ("Trust Agreements").  [Doc. No. 38, p. 2]; [Doc. No. 43, p. 11].  However, while he resigned as business manager, Patterson never resigned his trustee position.

In October 2014, plaintiff Garry Langston ("Langston")— Local 584's President— notified the trustees of the Pension and Profit Sharing Plans of Patterson's removal as trustee and Shipman's appointment.  [Doc. No. 38, pp. 3–4]; [Doc. No. 43, pp. 13–14]; [Doc. No. 38-1, pp. 226 –227].  The trustees responded on November 14, 2014, informing Langston that the removal and appointment were ineffective.  [Doc. No. 38-1, p. 247].  The trustees explained that under the terms of the Trust Agreements, Patterson's removal could only be accomplished by "affirmative action of [union] membership."  [*Id.* at 246–47].  Following this correspondence, the trustees exercised their authority to interpret provisions of the Trust Agreements.  [Doc. No. 43-1, p. 17]; [Doc. No. 43-2, p. 22].  On December 3, 2014, the trustees voted that "affirmative action by [union] membership"—under the removal provisions—"means a closed ballot vote of a duly called" Local 584 meeting "with 21 days prior written notice advising the membership that the ballot would be for the removal of a [t]rustee."  [Doc. No. 38-1, p. 252].  Local 584 was advised of this interpretation on December 5, 2014.  [*Id.* at 254].

Langston, however, was undeterred.  On August 7, 2015, he moved to remove Patterson and appoint Shipman as trustee of the Pension and Profit Sharing Plans.  [*Id.* at 256–63].  That effort did not provide 21 days' notice of the removal initiative, and was therefore rejected by the trustees.  [*Id.*].  The trustees explained—in accordance with their December 3, 2014 guidance— that a proper "written ballot would need to specifically contain the purpose of the vote—that is, it should clearly state a vote will be held for the removal of Johnny Patterson as [t]rustee." [*Id.* at 262].  Notwithstanding this impasse, Shipman was seated as an employee trustee in October 2015, upon the resignation of another union trustee.  [Doc. No. 38, p. 6]; [Doc. No. 43, p. 16]. Patterson also continues to serve as a trustee.

Plaintiffs filed the instant suit on February 9, 2016, alleging violations of Pension and Profit Sharing Plan terms, fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a)(1), and the equal representation provisions of the Labor Management Relations Act (the "Taft-Hartley Act"), 29 U.S.C. § 186.  Both parties now move for summary judgment.

## II. Legal Standard

Summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (a).  A dispute is "genuine" if the evidence permits a rational trier of fact to resolve the issue either way.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 670 (10th Cir. 1998).  A fact is "material" if it is "essential" to the outcome of the case.  *Id.*  On review, a court must examine the record in the light most favorable to the party opposing summary judgment.  *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).  But "the nonmoving party may not rest on its pleadings [and] must

set forth specific facts showing that there is a genuine issue for trial[.]" *See Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

Summary judgment is particularly appropriate where relevant material facts are undisputed and a motion presents a pure question of law. *See QuikTrip Corp. v. Javaher*, No. 14-V-674-JHP-PJC, 2015 WL 7103558, at *3 (N.D. Okla. Nov. 13, 2015). Here, "the material facts consist solely of the terms of the Trust [Agreements]." *See Holcomb v. Un. Auto. Ass'n of St. Louis, Inc.*, 658 F.Supp. 84, 87 (E.D. Miss. 1987). "Summary judgment should, therefore, be granted in favor of whatever party": (1) properly construes the terms of those Agreements; and (2) "establishe[s], as a matter of law, that it is entitled to a judgment on" plaintiffs' claims. *See id.*

### III. Analysis

The terms of the Pension and Profit Sharing Trust Agreements govern the appointment and removal of union trustees. With respect to appointment, trustees are "designated by the Union," and "continue to serve until" resignation or removal. [Doc. No. 43-1, p. 9]; [Doc. No. 43-2, p. 11]. In contrast, trustees are "removed . . . by affirmative action of [union] membership," "duly certified by the President or Secretary of the Local Union, in writing, and delivered to the Secretary of the Board of Trustees." [Doc. No. 43-1, p. 9]; [Doc. No. 43-2, p. 11]. In the event of removal, successor trustees are to "be named and appointed . . . by the same party . . . which named and appointed his predecessor." [Doc. No. 43-1, p. 10]; [Doc. No. 43-2, p. 13]. Upon accepting his trusteeship in writing, a successor "immediately . . . become[s] vested with all the rights, title, powers and duties of a Trustee." [Doc. No. 43-1, p. 10]; [Doc. No. 43-2, p. 13]. The Trust Agreements do not define "affirmative action of [union] membership."

Plaintiffs do not clearly articulate a construction of the Trust Agreements. But those the court can divine are unpersuasive. *First*, plaintiffs suggest unilateral action by Langston—Local 584's President—qualifies as "affirmative action" by union membership. *See* [Doc. No. 38, p. 4]. Nonsense. Action by "membership" contemplates some role for rank-and-file union members and flatly contradicts plaintiffs' *l'état cest moi* conception of union politics. [Doc. No. 40-4, Langston Dep. at 63:22] ("I am the union."); [*id.* at 23:4-24:21]; *see Culinary & Serv. Emps. Union, AFL-CIO Local 555 v. Hawaii Emp. Benefit Admin., Inc.*, 688 F.2d 1228, (9th Cir. 1982) ("[T]he power to appoint or remove trustees remains with the union membership absent a delegation to union officers." (citing *Nat'l Bank v. Employing Bricklayers' Ass'n*, 169 F.Supp. 591 (E.D. Pa. 1959)). Indeed, the fact Langston was required to certify any removal action by union membership makes the distinction all the more clear. *See* [Doc. No. 43-1, p. 9]; [Doc. No. 43-2, p. 11].

*Second*, plaintiffs argue Patterson's resignation as business manager functionally removed him as trustee. [Doc. No. 38, at 4]. Specifically, Art. 17, § 8 of the IBEW Constitution provides that a local business manager "shall serve . . . as trustee on all trust funds . . . provided for in [   ] collective bargaining agreements." [Doc. No. 38-1, p. 118]. And that is true, as far as it goes. But it is not very far. For one thing, the IBEW Constitution and Trust Agreements are "governed by two entirely distinct and separate contracts with different parties." *See Aluminum Co. of Am. v. Electro Flo Corp.*, 451 F.2d 1115, 1118 (10th Cir. 1971). And plaintiffs offer no basis for the contention that the internal operating procedures of IBEW control the terms of the Trust Agreements. For another, plaintiffs conflate appointment and removal authority. [Doc. No. 42, p. 6] ("While Defendants intimate that there is some difference between the removal of a trustee and the appointment of a trustee, they are not different.") (emphasis omitted). Such a

5

reading is belied by the plain text of the Agreements.  [Doc. No. 43-1, p. 9]; [Doc. No. 43-2, p. 11].

*Third*, plaintiffs contend the trustees' construction of the Trust Agreements—to require notice and closed-ballot voting on removal—lacks a textual basis, violates the equal representation provisions of the Taft-Hartley Act, and violates fiduciary duties under ERISA. Plaintiffs' arguments lack merit.  As noted above, the Trust Agreements do not define "affirmative action of [union] membership" for purposes of removal.  But trustees may "construe the provisions" of the Agreements, which becomes "final and binding upon" any individual or group "affected."  [Doc. No. 43-1, p. 17]; [Doc. No. 43-2, p. 22].  Even more specifically, trustees "may inquire into the accuracy and circumstances of any" certified removal.  [Doc. No. 43-1, p. 9]; [Doc. No. 43-2, p. 11].  Pursuant to that authority, the trustees interpreted "affirmative action of [union] membership" to mean "a closed ballot vote of a duly called meeting . . . with 21 days prior written notice advising membership that the ballot would be for the removal of a [t]rustee[.]"  [Doc. No. 32-8, p. 2].  Plaintiffs' removal efforts—first by fiat, then by no-notice vote—were rejected on that basis.  For this reason, plaintiffs' claim to enforce the terms of the Pension and Profit Sharing Agreements (Counts I & III) fail.  The only remaining question is whether the trustees' interpretation violates the Taft-Hartley Act or ERISA.

With respect to Taft-Hartley, plaintiffs argue that employer trustees impermissibly participated in the selection of union trustees.  [Doc. No. 38, pp. 8–9]; [Doc. No. 42, p. 2].  That is not so.  At most, trustees exercised their contractual authority to prescribe a removal *process*; employers did not cast a vote in the actual ballot initiative for removing or selecting union trustees.  That distinguishes this case from those cited by plaintiffs, in which employer or union

representatives impermissibly selected or served as an adverse party's trustee. *See Quad City Builders Ass'n v. Tri City Bricklayers Union No. 7, AFL-CIO*, 431 F.2d 999, 1003 (8th Cir. 1970) (barring union member from serving as "employer" trustee); *Mobile Mech. Contractors Ass'n, Inc. v. Carlough*, 456 F.Supp. 310, 326 (S.D. Ala. 1978) (prohibiting union selection or removal of employer trustee), *rev'd on other grounds by* 664 F.2d 481 (5th Cir. 1981); *Holcomb v. Un. Auto. Ass'n of St. Louis, Inc.*, 658 F.Supp. 84, 87 (E.D. Miss. 1987) ("Defendants admit that the Board of Trustees . . . does not satisfy the 'equal representation' requirement[.]").  Such is not the case here.

At bottom, the Taft-Hartley Act requires "employers and employees be equally represented in the administration of a trust fund." *See Mech. Contractors Ass'ns v. Huico, Inc.*, No. C75-667S, 1976 WL 1627, at *3 (W.D. Wash. Aug. 27, 1976).  And plaintiffs make no contention here that the trusts themselves are being administered without equal employer/employee representation. *See id.*  Indeed, the Trust Agreements plainly provide for an equal number of employer and employee trustees. [Doc. No. 43-1, p. 9]; [Doc. No. 43-2, p. 11]. Accordingly, the court finds plaintiffs' Taft-Hartley claim for relief fails as a matter of law.[1]

With respect to ERISA, plaintiffs allege the trustees breached their fiduciary duties by imposing notice and closed-ballot removal requirements. [Doc. No. 38, pp. 9–12].  Specifically, plaintiffs contend such procedures entrench and insulate trustees from plan beneficiaries. [*Id.*]. That contention is not just wrong, but backwards.  Securing direct participation by union membership in the removal process *aligns* trustee-beneficiary incentives.  Rather than entrenching incumbent trustees, notice, participation, and closed-ballot voting enhances trustee accountability. *See Int'l Broth. of Teamsters, Joint Council 18 v. N.Y. State Teamsters Council*

---

[1] Plaintiffs' Taft-Hartley claim appears in their request for relief. *See* [Doc. No. 2, p. 13].

*Health & Hosp. Fund*, 903 F.2d 919, 923 (2d Cir. 1990) ("[T]he amendment tends to reduce, not increase, the opportunities of employee trustees to entrench themselves."). In this way, such requirements meaningfully differ from structural entrenchment provisions—such as for-cause removal or life tenure. *See Levy v. Local Union No. 810*, 20 F.3d 516, 520 (2d Cir. 1994) ("[T]he trustees of the benefit plan are immune from removal, even in the event of their malfeasance or upon the expiration of their stated terms."); *Teamsters Local No. 145 v. Kuba*, 631 F.Supp. 1063, 1071–72 (D. Conn. 1986) (invalidating "proper and just cause" removal requirement).

It is true that ERISA requires benefit plan administrators to discharge fiduciary duties "solely in the interest of [   ] participants and beneficiaries." 29 U.S.C. § 1104(a)(1); *see also N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 332–34 (1981). But it "does not place structures for selection of ERISA trustees in a straitjacket." *See Int'l Union of Bricklayers & Allied Craftsmen Local No. 5 v. Hudson Valley Dist. Council Bricklayers & Allied Craftsmen Joint Benefit Funds*, 858 F.Supp. 377 (S.D.N.Y. 1994). The test for entrenchment is whether a trustee may be terminated "'on reasonably short notice . . . so that the plan would not become locked into an arrangement that may become disadvantageous.'" *See Levy*, 20 F.3d at 519 (quoting Dept's of Labor, Pension & Benefit Welfare Programs, Op. 85-41(Dec. 5, 1985)). Put differently, a trustee's conduct "should be subject to effective oversight on behalf of plan participants and beneficiaries." *See id.*

The Trust Agreements—as interpreted—provide ample oversight here. Employee trustees are neither life tenured nor removable for cause; they are terminable at will upon affirmative action by union membership. Admittedly, such action may only take place after three weeks' notice and a closed-ballot vote. But that is a modest burden, and one which

8

facilitates employee democracy.  In truth, the trustees interpretation provides substantially more oversight that other measures—such as a fixed term of years—expressly permitted by Department of Labor regulations.  *See* Dept's of Labor, Pension & Benefit Welfare Programs, Op. 85-41(Dec. 5, 1985) ("We do not intend to suggest that trustees should serve only at will. Limited terms, such as for a specified number of years, that are reasonable under the facts and circumstances of the plan generally would be consistent with ERISA.").  Accordingly, the court finds that plaintiffs' breach of fiduciary duty claims (Counts II & IV) fail as a matter of law.[2]

WHEREFORE, plaintiffs' Motion for Summary Judgment [Doc. No. 38] is denied and defendants' Motion for Summary Judgment [Doc. No. 40] is granted.

IT IS SO ORDERED this 16th day of February, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[2] To the extent plaintiffs state a claim for breach of fiduciary duties under the Taft-Hartley Act, that claim also lacks merit.  *See Amax*, 453 U.S. at 332 ("ERISA essentially codified the strict fiduciary standards that a § 302(c)(5) trustee must meet."); *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 724 F.2d 406, 411 (4th Cir. 1983) (explaining that fiduciary duties imposed by ERISA and Taft-Hartley are the same); *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Indus. of S. Cal.*, 703 F.2d 386, 391 (9th Cir. 1983) ("[T]he Taft-Hartley provisions parallel the ERISA provisions and . . . trustees must meet the requirements of each.").